# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF INDIANA

**SOUTH BEND DIVISION**

FILED – JAN 20, 2026 – PM04:07
US DISTRICT COURT
Northern District of Indiana
Chanda J. Berta – Clerk

3:26-cv-00030

SHONDRA RULLI,

Plaintiff,

v.

FILED – MAY 12, 2026 – PM12:39
US DISTRICT COURT
Northern District of Indiana
Chanda J. Berta – Clerk

ANDREW WARD

MARVIN WARD

ST. JOSEPH COUNTY, INDIANA;

ST. JOSEPH COUNTY PROSECUTOR'S OFFICE;

ST. JOSEPH COUNTY PROBATION DEPARTMENT;

ST. JOSEPH COUNTY SUPERIOR COURT

(ADMINISTRATIVE AND NON-JUDICIAL ACTS ONLY);

SOUTH BEND POLICE DEPARTMENT;

GEOFFRY BLAZI

ARIC RUTKOWSKI

CHRISTOPHER COLLINS

ELIZABETH HURLEY

SHIRLEY WILLIAMS

KAIT VINNEDGE

KALON NARAGON

Defendants.

---

# FIRST AMENDED COMPLAINT FOR

## VIOLATION OF CIVIL RIGHTS (42 U.S.C. §§ 1983, 1985),

## MUNICIPAL LIABILITY (MONELL),

## AND CIVIL RACKETEERING (18 U.S.C. § 1962)

### JURY TRIAL DEMANDED

This case describes the living hell women and children experience in the family court system—when the justice system protects an abuser instead of the people he harms.

For nearly 5 years Plaintiff Shondra Rulli and her children were subjected to escalating violence, intimidation, financial coercion, and parental kidnapping by Andrew Ward—a man repeatedly arrested, charged, and supervised by the State. At every critical moment when state actors were required to act, they chose not to. Worse, they repeatedly intervened to shield Mr. Ward from

accountability while using the power of the courts and law enforcement to intimidate, silence, and punish the victim.

This is not a case of a single mistake or poor judgment. It is a pattern. A pattern of deliberate inaction, coordination, selective enforcement, and retaliation that emboldened a known violent offender, exposed children to ongoing danger, and deprived Plaintiff of her constitutional rights to safety, due process, and equal protection under the law.

The Constitution does not permit the government to stand by while violence continues, nor does it allow state actors to use their authority to protect insiders, punish whistleblowers, or coerce victims into silence. This lawsuit seeks accountability, protection, and relief.

# I. JURISDICTION AND VENUE

(Fed. R. Civ. P. 8(a); 28 U.S.C. §§ 1331, 1343)

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. §§ 1962(c)–(d), and the First and Fourteenth Amendments.
2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).
3. Venue is proper in this District under 28 U.S.C. § 1391(b) because all events occurred within the South Bend Division of the Northern District of Indiana.

# II. PARTIES

4. Plaintiff Shondra Rulli is a resident of Indiana, a documented victim of domestic violence, and the sole legal and physical custodian of her minor children.
5. Defendant Andrew Ward, repeated offender, beneficiary to the organized scheme.
6. Defendant Marvin Ward, father to offender, facilitator of ongoing obstruction.
7. Defendant St. Joseph County, Indiana is a municipal entity responsible for the policies, customs, practices, training, and supervision of prosecutors, probation officers, court personnel, and law enforcement, and is liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).
8. Defendant St. Joseph County Prosecutor's Office is responsible for charging decisions, probation enforcement, child support enforcement and compliance with statutory victims' rights.
9. Defendant St. Joseph County Probation Department supervises felony probationers and enforces court-ordered conditions.

10. Defendant St. Joseph County Superior Court is sued only for administrative, supervisory, and non-judicial acts, including scheduling, access to hearings, clerical handling of filings, and systemic practices, for which judicial immunity does not apply.
11. Defendant South Bend Police Department is responsible for law-enforcement policies and practices within its jurisdiction.
12. Defendant Geoffry Blazi, plantiff's former attorney, appointed by the Domestic Violence Coalition.
13. Defendant Kalon Naragon, brother in law to repeated offender and police officer at SBPD
14. John and Jane Does 1–50 are prosecutors, probation officers, magistrates, referees, clerks, police officers, supervisors, and policymakers whose identities will be substituted when known. All acted under color of state law (42 U.S.C. § 1983).

# III. STATEMENT OF FACTS

### A. Known Violence, Probation, and Systemic Non-Enforcement

Andrew Ward has a documented history of violence, substance abuse, and criminal conduct. While on probation for a prior battery offense, Mr. Ward held Plaintiff (pregnant) and their four-month-old infant at gunpoint and attempted to rape and suffocate Plaintiff with a pillow. Despite the severity of this conduct and his probationary status, no new charges were filed and no probation violation occurred, reflecting a pattern of deliberate non-enforcement consistent with municipal custom and practice (Ind. Code § 35-38-2-3; U.S. Const. amend. XIV; 42 U.S.C. § 1983; Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

In February 2022, Mr. Ward was arrested and charged with Felony Domestic Battery on a Pregnant Person (Ind. Code § 35-42-2-1.3). Plaintiff was never informed of the sentencing outcome and was falsely told Mr. Ward would serve several years in prison, depriving Plaintiff of statutory and constitutional victims' rights to notice and participation (Ind. Code § 35-40-5-1; 18 U.S.C. § 3771; U.S. Const. amend. XIV; 42 U.S.C. § 1983).

Instead, Mr. Ward was placed on probation without disclosure, despite the violent nature of the offense and Plaintiff's protected status as a domestic-violence victim, consistent with a policy or custom of shielding repeat offenders connected to law enforcement (Ind. Code § 35-38-2-2.3; Monell, supra).

While on probation, Mr. Ward repeatedly assaulted Plaintiff, including breaking into her home, attempting rape, and strangling her. These crimes were documented in police reports, including admissions by Mr. Ward. One report stated he would "likely be placed under arrest." No arrest occurred. The prosecuting attorney's office was notified and took no action, constituting selective non-enforcement and denial of equal protection pursuant to an unofficial but persistent municipal practice (U.S. Const. amend. XIV; 42 U.S.C. § 1983; Monell, supra).

### B. Escalation, Drug Use, and Official Protection of Ward

As violence escalated in the presence of the children, the Department of Child Services initiated an eight-month investigation, acknowledging substantial risk (Ind. Code § 31-33-8-1). During this investigation, Mr. Ward overdosed on fentanyl twice in October 2022. Despite EMS intervention and hospitalization, no probation violation occurred, demonstrating deliberate indifference and failure to act under established supervision authority (Ind. Code § 35-38-2-3; U.S. Const. amend. XIV; 42 U.S.C. § 1983).

Mr. Ward's brother-in-law, a South Bend Police Department officer, responded to one overdose scene. No arrest or probation action followed, evidencing preferential treatment and conflict of interest consistent with an entrenched municipal custom (U.S. Const. amend. XIV; Monell, supra).

After Mr. Ward was terminated from probation due to ongoing use of Fentanyl, he was placed on house arrest. Despite the documented drug use, he was no longer required to participate in drug treatment, no regular drug testing. And had full driving privileges from 6am-8pm.

Plaintiff made repeated attempts to report ongoing DV in front of children, ongoing financial coercion with child support now over $20,000 behind. Plantiff was discouraged to ask for protective orders, yelled at when stating concerns of ongoing drug use around children.

Despite Andrew and plaintiff now being in litigation more than 5x a year for over 3 years, the Title IV-D prosecutor never filed for enforcement, lied to the court about any arrears. The prosecutors office continued to defend Andrew, refused to implement any methods of enforcement such as drivers license suspension. The plaintiff filed a complaint with the state attorney general to enforce support order, which forced the St Joseph County Prosecutor to enforce.

In early 2023, DCS disclosed that Mr. Ward continued using illegal substances and failed every probation drug test. His probation was not violated nor revoked. This ongoing inaction, despite documented danger, reflects a policy or custom of tolerating violations by favored individuals (Ind. Code § 35-38-2-3; 42 U.S.C. § 1983; Monell, supra).

Despite this record, Mr. Ward petitioned for custody in May 2023, triggering statutory duties to consider domestic violence and substance abuse, which the court ignored pursuant to an institutional pattern (Ind. Code §§ 31-17-2-8, 31-17-2-21; Monell, supra).

On July 12, 2023, Mr. Ward caused a serious traffic collision while en route to a methadone clinic, with a needle hidden in a child's car seat. Police failed to investigate or initiate probation action despite probable cause, consistent with systemic non-enforcement (Ind. Code §§ 35-46-1-4, 35-38-2-3; 42 U.S.C. § 1983; Monell, supra).

Mr. Ward's probation officer admitted knowing he was using drugs but stated enforcement was "pointless," affirmatively abandoning statutory duties and increasing danger to Plaintiff and children (Ind. Code § 35-38-2-1; U.S. Const. amend. XIV; 42 U.S.C. § 1983).

## C. Retaliation and State-Created Danger

Plaintiff raised safety concerns regarding Mr. Ward driving children while under the influence. The probation officer disclosed Plaintiff's concerns directly to Mr. Ward, violating victim-protection statutes and exposing Plaintiff to retaliation (Ind. Code § 35-40-5-1; U.S. Const. amend. XIV; 42 U.S.C. § 1983).

Following this disclosure, Mr. Ward threatened Plaintiff, establishing a state-created danger resulting from affirmative governmental action (see Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996)).

Plaintiff's subsequent invocation of victims' rights in November 2025 received no response, denying access to courts pursuant to municipal custom (U.S. Const. amend. XIV; Monell, supra).

## D. Family Court Conduct as Municipal Policy

Plaintiff was repeatedly silenced during hearings and denied the right to be heard. The magistrate mocked Plaintiff, ignored evidence of violence and drug use, and repeatedly declined to sanction Mr. Ward despite contempt findings, while expanding his parenting time. These actions reflect a de facto policy of discouraging enforcement for domestic-violence victims (U.S. Const. amend. XIV; 42 U.S.C. § 1983; Monell, supra).

The magistrate imposed financially ruinous visitation conditions and manipulated child-support calculations, depriving Plaintiff of due process (Ind. Code § 31-16-6-1; U.S. Const. amend. XIV).

Plaintiff motioned the court in November 2025 for a change in venue as this racketeering was not specific to one judiciary and a change of judge would be nonsufficient. Plaintiff's motion included statements on the ongoing prosecutorial misconduct across family court, superior court, probation, and child support enforcement. That filing was completely ignored. During the hearing 12/10/25, Andrew appeared with a public defender, despite no notice given to plaintiff and no record on the issued order and notice to appear. Plaintiff was not allowed to address the court during that hearing.

The magistrate's physical destruction of Plaintiff's enforcement motion and coercion into relinquishing parenting time constituted substantive due-process violations carried out under color of state law (U.S. Const. amend. XIV; 42 U.S.C. § 1983; Monell, supra).

## E. Coordinated Obstruction and

## RICO Predicate Acts

Plaintiff attorney privately communicated with the magistrate, refused to litigate, disclosed strategy, and actively discouraged enforcement, depriving Plaintiff of meaningful access to courts (U.S. Const. amend. XIV; 42 U.S.C. § 1983).

Marvin Ward instructed Kalon Naragon to interfere with police investigation to aid Andrew from legal consequence.

Plantiff motioned the Probate Court for child support enforcement after 18mo of non payment and court officials not once mentioning support. Plantiff again motioned for contempt as she had 3 toddlers, no access to childcare, and had not had any income and 2 months behind on mortgage. Aric Rutkowski held up the filing, and said, "ehhh.. I don't like how this was written." He then wadded up the paper in open court and tossed aside. When plantiff desperately expressed support to afford childcare, Mr Rutkowski angrily cut her off and shouted. "Well then get child care." In a prior hearing, Mr Rutkowski shouted at plantiff, "why would you even be asking for child support?" Plantiff had custody of all 3 children, with father having 6 hours a week of visitation. Plantiff explained how she was not allowed to work during the relationship and Andrew often threatened to leave if she did seek employment, Plantiff appeared in court with babies due to lack of childcare, and having monthly court hearings for nearly a year. The court awarded the children Andrew's last name on the grounds that he was the financial provider—despite refusing to pay support. His support obligation was only around $600/mo, when Plantiff requested a modification, having bank statements, and Andrew stating in court TWICE, that he usually makes around 100k/yr, Magistrate Rutkowski instructed prosecutor to calculate support based on Indiana guidelines, prosecutor stated the calculation would be $1500, Rutkowski said, "Nah, that's too much." Then imputed plantiff's income to be higher, and lowered Andrew's income, determining $800/mo was sufficient.

Andrew's truck was "stolen" and was without reasonable transportation during winter/spring 2024, Coincidently, the day before Mr. Rutkowski awarded Andrew with unsupervised visitation, Marvin provided Andrew with a $50k truck.

Marvin Ward spoke with plaintiff's attorney, Geoffery Blazi during family court proceedings. Plantiff expressed concerns of sexual abuse, explained Marvin's position in the matter, Mr Blazi told victim she was incorrect, and defended Marvin stating, " He really wants to help and ensure the grandchildren have stability." Plaintiff continued to ask for disclosure and an explaination on his refusal to do discovery, victim shame, and become aggressive when questioned. Mr Blazi told plaintiff, "well even if there is sexual abuse, he will still be allowed visitation."

In November 2025, as Andrew's blatant disregard for the law, parental rights, probation terms had progressively becoming more egregious, (Kidnapping the 3 toddlers for more than 3 weeks, refusing to allow child to attend school, DCS investigation, drug use in front of children,) Plaintiff explained his fathers organized harassment, his enablement by the court, police interreference, Andrew was shocked, he was completely oblivious and really believed he's doing a great job. Andrew quickly defended his fathers behavior and shifted the blame to plantiff.

Plaintiff recognized the ongoing organized efforts, and explained to Kait Vennedge, victims advocate at FJC in detail. The family justice center works in connection with the County Prosecutor and help DV victims specifically. Kait discouraged protective order, never mentioned "victims rights," her supervisor attended a status hearing for Andrew's criminal court preceedings, but never gave information regarding what occurred. Mr Blazi became hostile and aggressive towards Plaintiff, to the point plaintiff wanted him removed from the case. Plantiff

explained many times that Mr Blazi was not acting in her best interest and actually defending Andrew. Kait encouraged plantiff to continue to work with Mr. Blazi and despite pointing out all of his efforts to sabotage and making the entire situation much worse, she continued to deny any ethical concerns. Kait provided no solution and abandoned plantiff just a week before trial.

Andrew Ward appeared in court under the influence, Mr Blazi spoke with him outside the courtroom prior to the hearing, upon return to the courtroom, Mr Blazi stated quietly to the plantiff and victims advocate, Kait. "That guy is high as a kite, his pupils are like pen needles." Andrew became beligerant in court, arguing with the judge. Mr Blazi refused to mention this to the court and didn't advocate for the plantiff or children until the hearing was coming to an end and the plantiff had to nudge him and say, "Well aren't you going to say something?" Mr. Blazi then nervously muttered "we may have some substance problems." The magistrate ended the hearing and set a new date.

Court officials provided Marvin Ward with filings that were never even entered into the docket. When asked for a case summary, continued to explain that the case was highly confidential and was not allowed access.

These actions, combined with prosecutors' non-enforcement, probation officers' admissions of deliberate inaction, and police refusal to act—while shielding Mr. Ward due to familial law-enforcement connections—constitute an association-in-fact enterprise operating within county institutions (United States v. Turkette, 452 U.S. 576 (1981)).

The guardian ad litem was through in her report, noting the ongoing DV, substance abuse, driving record, and Andrew's lack of credibility. Her suggestions to the court completely contracted all of her writing and specifically mentioned child exchanges should occur at the SBPD station, which neither Andrew nor plaintiff was within the jurisdiction, and mentioned that it was specific to my safety as any suspected drug use or violence could be effectively handled. After SBPD continued to refuse reports, enforce the law, or act on criminal matters, threaten body cam footage to the probate court, and tip off Andrew's two brother in laws about information disclosed rather than reporting it.

Plaintiff has sent FOIA requests to multiple agencies and denied or ignored. Despite never providing information, the requests were disclosed to Marvin Ward.

Defendants engaged in a pattern of racketeering activity, including:

- obstruction of justice (18 U.S.C. §§ 1503, 1512),
- witness intimidation and retaliation (18 U.S.C. § 1513),
- deprivation of rights under color of law (18 U.S.C. § 242),
- and mail/wire fraud in the manipulation of court processes (18 U.S.C. §§ 1341, 1343),

all in violation of 18 U.S.C. §§ 1962(c)–(d).

## F. Law-Enforcement Collusion and Retaliation

Despite Plaintiff holding legal and physical custody, Mr. Ward repeatedly withheld the children. Police across three departments refused to intervene. After Plaintiff filed a DOJ complaint and Title IV-D sought enforcement, Mr. Ward withheld the children for over thirty days.

Police officers sided with Mr. Ward after he disclosed law-enforcement connections, threatened Plaintiff with adverse use of body-camera footage, and failed to produce that footage after a FOIA request, evidencing coordinated retaliation and evidence suppression (42 U.S.C. §§ 1983, 1985; Monell, supra; 18 U.S.C. § 1962).

# IV. CLAIMS FOR RELIEF

## COUNT I

42 U.S.C. § 1983 — Procedural and Substantive Due Process

38. Defendants deprived Plaintiff of liberty and property interests without notice, hearings, or a neutral tribunal, in violation of the Fourteenth Amendment.

## COUNT II

42 U.S.C. § 1983 — Equal Protection / Selective Non-Enforcement

39. Defendants selectively refused to enforce criminal, probation, custody, and support laws due to Mr. Ward's law-enforcement connections, denying Plaintiff equal protection.

## COUNT III

State-Created Danger (§ 1983)

40. Defendants affirmatively increased danger to Plaintiff and her children by disclosing safety complaints, refusing enforcement, and enabling continued access by a violent offender.

## COUNT IV

Municipal Liability — Monell

41. Plaintiff's injuries were caused by official policies, customs, and practices of St. Joseph County, including failure to train, supervise, and discipline officials (Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

## COUNT V

Civil RICO — 18 U.S.C. §§ 1962(c)–(d)

42. Defendants formed an association-in-fact enterprise through county institutions and engaged in a pattern of racketeering activity, including obstruction of justice, witness retaliation, deprivation of rights under color of law, and manipulation of court processes, resulting in concrete injury to Plaintiff.

# V. PRAYER FOR RELIEF

Plaintiff respectfully requests:

A. Declaratory judgment that Defendants violated Plaintiff's constitutional rights;

B. Emergency injunctive relief prohibiting further retaliation and requiring federal oversight of family and criminal court proceedings.

C. Compensatory damages;

D. Punitive damages where permitted;

F. Such other relief as this Court deems just.

# VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

_Shondra Bulli_

Shondra Bulli

209-591.3420

5-12-26